## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FKF MADISON GROUP OWNER, LLC, *et al.*,[1] | Case No. 10-11867 (KG) |
| Debtors. | Jointly Administered |
| FKF MADISON GROUP OWNER LLC,<br>JMJS 23RD STREET REALTY OWNER LLC,<br>MADISON PARK GROUP OWNER LLC, AND<br>SLAZER ENTERPRISES OWNER LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FOREST MALL, LLC,<br><br>Defendant. | Adv. Proc. No. 11-53450 (KG) |

## BRIEF IN SUPPORT OF DEBTORS' MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY
## INJUNCTION AGAINST FOREST MALL LLC

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
Erin R. Fay (No. 5268)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200

*Counsel for Debtors and Debtors-in-Possession*

Date: October 31, 2011

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner LLC (6399); JMJS 23rd Street Realty Owner LLC (6651); Madison Park Group Owner LLC (3701); and Slazer Enterprises Owner LLC (4339). The Debtors' mailing address is P.O. Box 49249, Charlotte, NC, 28277.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................. 3

STATEMENT OF THE FACTS ......................................................................... 4

    A.    Factual Background from the Debtors' Cases .............................................4

    B.    Factual Background Regarding Forest Mall .................................................7

ARGUMENT ................................................................................................. 10

    I.    This Court Should Enjoin Forest Mall From Continuing To Prosecute The Offensive Relief By Issuing A Temporary Restraining Order In The First Instance And Then A Preliminary Injunction .............................................................................................11

    A.    There is a Reasonable Likelihood That the Debtors Will Successfully Reorganize and That the Debtors Will Succeed on the Merits of Their Claims that Forest Mall Has Violated the Automatic Stay. ......................................................13

    B.    The Debtors Will Suffer Immediate Irreparable Harm Without the Injunctive Relief. ...........................................................17

    C.    The Balance of Equities Favors the Issuance of an Injunction and Temporary Restraining Order. ..........................18

    D.    Injunctive Relief is in the Public Interest Because Injunctive Relief Promotes the Debtors' Effective Reorganization and Promotes the Purpose of the Automatic Stay. ...............................................................................................19

    E.    Fed. R. Bankr. P. 7065 Expressly Exempts the Debtors from the Security Requirement of Fed. R. Civ. P. 65. ...............21

CONCLUSION ............................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                        <u>PAGE</u>

*A.H. Robins Co. v. Piccinin*,
   788 F.2d 994 (4th Cir.), cert. denied, 479 U.S. 876 (1986) ....................................15

*In re Am. Film Techs., Inc.*,
   175 B.R. 847 (Bankr. D. Del. 1994) ..........................................................................15

*In re Broadstripe, LLC*,
   402 B.R. 646 (Bankr. D. Del. 2009) ..........................................................................19

*In re Calpine Corp.*,
   365 B.R. 401 (S.D.N.Y. 2007)...................................................................................11

*Gillman v. Continental Airlines, Inc. (In re Continental Airlines)*,
   177 B.R. 475 (D. Del. 1993) .....................................................................................14

*In re Ionosphere Clubs, Inc.*,
   111 B.R. 423 (Bankr. S.D.N.Y. 1990), *aff'd in part*, 124 B.R. 35 (S.D.N.Y. 1991)..............15

*Kos Pharms., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004).......................................................................................12

*Loewen Group Int'l, Inc. v. Gilligan (In re Loewen Group Int'l, Inc.)*,
   2001 WL 1819995 (Bankr. D. Del. 2001) ...............................................................14

*Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.)*,
   117 B.R. 64 (S.D.N.Y. 1990)..............................................................................15, 20

*In re Monroe Well Service*,
   67 B.R. 746 (Bankr. E.D. Pa. 1986) .....................................................................13, 16

*Morton v. Beyer*,
   822 F.2d 364 (3d Cir. 1987)......................................................................................17

*In re Otero Mills, Inc.*,
   21 B.R. 777 (Bankr. D.N.M. 1982) ......................................................................13, 16

*In re Prudential Lines, Inc.*,
   107 B.R. 832 (Bankr. S.D.N.Y. 1989)..................................................................12, 17

*Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg. Servs., Inc.)*,
   360 B.R. 421 (Bankr. D. Del. 2007) .................................................................. Passim

*Sudbury, Inc. v. Escott (In re Sudbury, Inc.)*,
   140 B.R. 461 (Bankr. N.D. Ohio 1992) ....................................................................15

*Tootsie Roll Indus., Inc., v. Sathers, Inc.*,
    666 F. Supp. 655 (D. Del. 1987) ......................................................................12

*In re Transcon Lines*,
    147 B.R. 770 (Bankr. C.D. Cal. 1992) ...........................................................17

*U.S. v. Bell*,
    414 F.3d 474 (3d Cir. 2005) ...........................................................................12

*In re W.R. Grace & Co.*,
    386 B.R. 17 (Bankr. D. Del. 2008) .......................................................12, 13, 16

**OTHER AUTHORITIES**

7 *Moore's Federal Practice* ¶ 65.05, at 65-100 (2d ed. 1990) ......................................11

**RULES AND STATUTES**

11 U.S.C. § 362(a) ............................................................................... Passim

11 U.S.C. § 105 .........................................................................................11, 12, 21

11 U.S.C. § 1107 .................................................................................................4

11 U.S.C. § 1108 .................................................................................................4

Fed. R. Civ. P. 65 ........................................................................................11, 21

Fed. R. Bankr. P. 7065 .................................................................................11, 21

N.Y. Ltd. Liab. Co. Law § 604(a) (McKinney 2011) .....................................................8

N.Y. Ltd. Liab. Co. Law § 607(a) (McKinney 2011) .....................................................8

N.Y. Ltd. Liab. Co. Law § 607(b) (McKinney 2011) .....................................................8

FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC, and Slazer Enterprises Owner LLC (collectively, the "Debtors") as debtors and debtors in possession in the above-captioned cases and as plaintiffs in the above-captioned adversary proceeding respectfully submit this brief (the "Brief") in support of their motion (the "Motion") for a temporary restraining order and preliminary injunction enjoining Forest Mall, LLC ("Forest Mall") from prosecuting certain Offensive Relief (defined below) in New York state court that seeks to possess and exercise control over property of the Debtors' estates all in violation of the automatic stay provisions of section 362 (the "Automatic Stay") of the title 11 of the United States Code ("Bankruptcy Code").

## INTRODUCTION

Contemporaneously herewith, the Debtors have filed a complaint (the "Complaint") against Forest Mall seeking an order of this Court: (a) declaring that Forest Mall's actions in seeking the Offensive Relief violate the Automatic Stay; (b) determining that Forest Mall's actions are willful and knowing violations of the Automatic Stay; and (c) granting the Debtors' damages. The Complaint seeks to preserve the Debtors' property and protect the Debtors' ability to function as fiduciaries for the benefit of the Debtors' estates from Forest Mall's transparent attempt to end run the Automatic Stay. The Debtors have filed the Motion and this Brief because it appears that Forest Mall, or a New York state court at the behest of Forest Mall, may take action in violation of the automatic stay in the next several days.

By an action pending in New York state court, Forest Mall - *one of the Debtors' unsecured creditors and an entity managed by one of the Debtors' equity holders* - seeks to prohibit Ira Shapiro ("Shapiro"), a member of Slazer Enterprises LLC ("Slazer"), by threat of contempt, from fulfilling his fiduciary duties in connection with the plan process through which

the Debtors seek to reorganize and exit bankruptcy. As this Court is well aware, the Debtors are managed by Slazer and the vote of each of Slazer's members is necessary to effectuate a plan of reorganization for the Debtors. Any interference with the ability of Slazer's members to freely carry out their fiduciary duties to support a plan is a serious impediment to the forward progress of the Debtors' cases. Forest Mall rationalizes its actions by posturing that it has a charging order against Shapiro's economic interest in Slazer, which is the sole member of one of the Debtors, and that by supporting a plan of reorganization that extinguishes equity interests, Shapiro is rendering the charging order valueless. Forest Malls' justification, however, ignores reality because Shapiro's economic interest in Slazer (an entity whose only asset is equity in a clearly insolvent company) is valueless regardless of whether Shapiro supports a plan for the Debtors. In addition, Forest Mall seeks discovery of the Debtors' business records through the state court proceeding. In reality, Forest Mall is attempting to gain control over the Debtors' assets and the direction of these cases, by forcing Shapiro to violate his fiduciary duties under threat of contempt of court. The Debtors cannot abide such illegal strong-arm tactics when their ability to reorganize is being placed in jeopardy. Forest Mall's actions pose a direct threat of irreparable harm to the Debtors, their estates, property and creditors cannot be condoned.

Counsel to the Debtors has repeatedly informed counsel for Forest Mall on not less than four occasions that the prosecution of such relief in New York state court violates the Automatic Stay and has demanded that the Forest Mall cease and desist from prosecuting the offending relief.[2] Undeterred, Forest Mall has refused to terminate its prosecution of the offending relief and as such is knowingly and willfully violating the Automatic Stay.

---

[2] The Debtors did not request that Forest Mall cease pursuing all relief against Shapiro, just those parts that directly impacted the Debtors' property or their ability to reorganize.

To prevent these irreparable harms, the Debtors bring the Motion and seek an order of this Court (a) issuing a temporary restraining order prohibiting Forest Mall from violating the Automatic Stay by seeking the Offensive Relief (as defined below) in state court which runs afoul of the Automatic Stay, and (b) issuing a preliminary injunction prohibiting Forest Mall from seeking Offensive Relief (as defined below) in state court that runs afoul of the Automatic Stay.

## SUMMARY OF THE ARGUMENT

1.      The Court should immediately restrain and enjoin Forest Mall from prosecuting the Offensive Relief for the following four reasons.

2.      First, there is a reasonable likelihood that the Debtors' reorganization will be successful given recent and positive events in the Debtors' cases, including the Debtors' settlement of principal issues with its prepetition lender and the Committee and the Debtors' negotiation of a largely consensual plan and related disclosure statement.  Indeed, the Debtors filed a plan and disclosure statement today.  There is also a reasonable likelihood that the Debtors will succeed on their claims that Forest Mall has violated the Automatic Stay by prosecuting an order in New York state court that would hand over property of the Debtors' estates to Forest Mall and allow Forest Mall to control the Debtors' cases.

3.      Second, the Debtors will be irreparably harmed if the Offensive Relief is granted and Forest Mall is able to preclude Shapiro from supporting a largely consensual plan of reorganization for the Debtors that has the support of the Debtors' secured lenders and Official Committee of Unsecured Creditors (the "Committee"), thereby frustrating the Debtors' reorganization efforts.  Blocking the Debtors' ability to reorganize is irreparable harm for which no monetary damages can compensate the Debtors.

4.       Third, the harm to the Debtors clearly outweighs the alleged harm to Forest Mall of potentially impeding its ability to improperly enforce a charging order on a valueless membership interest.

5.       Finally, granting an injunction is in the public interest because it reinforces the fundamental protections of the Automatic Stay and allows the Debtors to continue to prosecute their bankruptcy cases to successful conclusion through a plan that provides optimal recoveries to the Debtors' creditors. For these same reasons, the Court should issue a preliminary injunction prohibiting Forest Mall from seeking the Offensive Relief.

## STATEMENT OF THE FACTS

### A.      Factual Background from the Debtors' Cases

The Debtors are owners as tenants in common of a condominium tower located at 23 East 22nd Street in New York City. On June 8, 2010 (the "Petition Date"), involuntary chapter 7 petitions were filed in this Court against each of the Debtors by certain petitioning creditors, thereby commencing the Debtors' involuntary chapter 7 cases (the "Chapter 7 Cases"). On November 19, 2010, this Court entered Orders for relief in the Chapter 7 Cases and entered Orders converting the Chapter 7 Cases to cases under chapter 11 of the Bankruptcy Code (*See* D.I. 119). The Debtors are operating their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Each of the Debtors has certain members. The members of Debtor Madison Park Group Owner LLC are Kevin Romano, Howard Josephs, Walter Klauser and Mitchell Klein. Howard Josephs also holds an interest in Forest Mall and has submitted personal affidavits in support of the relief sought in the State Court Action (as defined below).

Slazer is the sole member of Debtor Slazer Enterprises Owner LLC ("Slazer Owner") and serves as the manager for all of the Debtors. Slazer, in turn, is presently controlled by Green Bridge Capital S.A. (35%) ("Green Bridge"), Special Situation S.A. (by proxy for Marc Jacobs) (32.5%) ("Special Situation" and together with Green Bridge, the "Controlling Members"), and Shapiro (32.5%).

On December 15, 2010, the Controlling Members initiated Adversary Proceeding No. 10-56158 (KG) in this Court by filing a complaint (the "Control Complaint"). The Control Complaint sought declaratory and injunctive relief providing that Shapiro did not have corporate authority to unilaterally act on the Debtors' behalf.

On January 31, 2011, after a lengthy evidentiary hearing in the Adversary Proceeding, the Court issued an order and memorandum opinion (together, the "Control Order") restraining Shapiro from taking further action in violation of Slazer's and the Debtors' governing instruments (Adv. D.I. 67). (*See* Compl. Exh. A.) The Control Order also provided that "Slazer's members must act by a majority for actions on its behalf and by unanimity for Material Actions on Debtors' behalf" and that "[i]t is therefore imperative that the [Controlling Members] and Shapiro enter into negotiations to develop and plan." (*See* Compl. Exh. A at p. 9.)

Following entry of the Control Order, the Controlling Members and Shapiro heeded the Court's instruction and undertook significant negotiations regarding the prosecution of the Debtors' chapter 11 cases. The Controlling Members and Shapiro quickly reached agreement regarding how to move forward together in the stewardship of these chapter 11 cases, including, without limitation, working to develop and propose a plan of reorganization.

In the months since the entry of the Control Order, the forward progress of the Debtors' cases has continued through the efforts of, among others, the Controlling Members and

Shapiro. As a result of such efforts, on or about September 19, 2011, the Debtors and their prepetition secured lender, One Madison FM, LLC ("OMF") entered into a commitment letter (the "Commitment Letter") that provides a roadmap for the Debtors' exit from these cases, which includes a competitive bidding process and a potential recovery for the Debtors' unsecured creditors. (*See* Compl. Exh. B.) This Court also recently entered an order approving a settlement between the Debtors, OMF, HFZ Capital Group LLC, and the Committee appointed in the Debtors' cases (the "Settlement Order") (D.I. 756), an order approving procedures whereby the Debtors may solicit competing plan proposals (the "Bid Procedures Order") (D.I. 757), and an order authorizing the Debtors to hire a broker to assist with marketing (the "Broker Order") (D.I. 698). Pursuant to the Bid Procedures Order, the Broker Order, and the Commitment Letter, the Debtors have initiated a competitive bidding process for a plan of reorganization for the Debtors. The Debtors have also prepared and negotiated a plan of reorganization with the Debtors' key stakeholders which was filed today.

In the midst of such positive developments, Forest Mall is attempting to derail the Debtors' forward progress through a proceeding in New York state court ostensibly against Shapiro. However, and as described below, Forest Mall's action against Shapiro is actually a transparent attempt to end run the Automatic Stay and must be stopped immediately. If Forest Mall is not enjoined from obtaining the relief it seeks in state court, the Debtors may become unable to confirm *any* a plan of reorganization, throwing these Debtors back into the chaos that pervaded the early stages of these cases. Such a result is contrary to the best interests of the Debtors, their estates, and their creditors (ironically, including Forest Mall).

### B.    Factual Background Regarding Forest Mall

On or about November 24, 2009, Forest Mall filed a summons, a notice of motion for summary judgment in lieu of complaint, and related papers in the Supreme Court of the State of New York, County of Rockland (the "State Court") against Slazer, Debtor Slazer Owner, Shapiro, and Marc Jacobs thereby initiating the action styled *Forest Mall v. Slazer Enterprises LLC, et al.*, Index No. 12479/2009 (the "State Court Action"). By the State Court Action, Forest Mall sought to obtain damages in the amount of $2,037,500 against the defendants in the State Court Action on account of unpaid principal, interest, and late charges allegedly due on account of a promissory note dated October 16, 2008 and related guarantees. (*See* Compl. Exh. C.)

On or about March 19, 2010, the State Court entered an order granting Forest Mall summary judgment in the State Court Action (the "Forest Mall Order"). (*See* Compl. Exh. D.) On April 21, 2010, the State Court entered a judgment against Debtor Slazer Owner, Slazer, Shapiro, and Marc Jacobs in the amount of $2,234,881.73 (the "Forest Mall Judgment"). (*See* Compl. Exh. E.) On May 7, 2010, counsel to Forest Mall issued a restraining notice to the judgment debtors under the Forest Mall Judgment (the "Restraining Notice"). (*See* Compl. Exh. F.)

The Petition Date in these cases occurred on June 8, 2010, less than ninety days after the entry of the Forest Mall Order and the Forest Mall Judgment and the issuance of the Restraining Notice. On the Petition Date, the Automatic Stay came into effect to stay, among other things, (a) the continuation of judicial proceedings against the Debtors that were commenced prepetition, (b) any act to recover a claim against the Debtors that arose prepetition, (c) the enforcement of a prepetition judgment against the Debtors or their property, and (d) any

act to obtain possession of property of the Debtors' estates or to exercise control over property of the Debtors' estates. *See* 11 U.S.C. § 362(a).

Following the Petition Date, Forest Mall sought to enforce the Forest Mall Judgment against certain property of Shapiro and obtained a charging order against Shapiro's membership interest in Slazer (the "Charging Order"). (*See* Compl. Exh. G.) By the Charging Order, it appears that the Forest Mall Judgment has attached to Shapiro's economic interest in Slazer. Pursuant to Slazer's formation documents and New York law, Forest Mall does not hold or control Shapiro's management interest in Slazer, including Shapiro's ability to vote on certain matters set forth in the Slazer's formation documents.[3] (*See* Compl. Exh. H.)

More recently, on October 12, 2011, Forest Mall presented an order to show cause (the "Order to Show Cause") to the State Court seeking among other things, an order requiring that Shapiro show cause why he should not be held in contempt of court for violating the Restraining Notice and Charging Order by "exercising his 32.5% voting interest in [Slazer] to enter into [the Commitment Letter] so as to cancel and defeat any value arising from that interest which properly should accrue to [Forest Mall] by way of [the Charging Order]" (such provision, the "Contempt Finding"). (*See* Compl. Exh. I at p. 1-2.) In other words, Forest Mall is

---

[3]     Pursuant to section 607 of the New York Limited Liability Companies Law (the "LLC Law"), a "judgment creditor has only the rights of an assignee of the membership interest." N.Y. Ltd. Liab. Co. Law § 607(a) (McKinney 2011). The LLC Law then provides that, "[e]xcept as provided in the operating agreement, an assignee of a membership interest may not become a member without the vote or written consent of at least a majority in interest of the members . . ." *Id.* at § 604(a). Slazer's operating agreement does not permit an assignee of a member's interest to vote or participate in management. In addition, the Act provides that, "no creditor of a member shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of a limited liability company." *Id.* at § 607(b). As a result, it is clear that whatever rights Forest Mall acquired by its Charging Order do not attach to Shapiro's voting or management rights in Slazer.

requesting the State Court to hold Shapiro in contempt for performing his fiduciary duties to the Debtors' estates by supporting the Debtors' current plan of reorganization in accordance with the Control Order.

The Order to Show Cause also provides that Shapiro shall show cause why an order should not be entered directing Shapiro to produce to Forest Mall a "complete accounting of . . . the finances of any company under his control or management, from the prior three years including, but not limited to, federal and state tax returns, bank statements, investments, real estate holdings, credit and debit card statements and an itemization of any expenditure in excess of $2.000.00" (such provision, the "Discovery Finding" and together with the Contempt Finding, the "Offensive Relief"). (*See* Compl. Exh. I at p. 3.) The Debtors believe they were under Shapiro's control or management within the prior three years.

The Debtors' counsel was notified that the proposed Order to Show Cause would be presented to the State Court prior to its presentation. The Debtors' counsel verbally contacted counsel to Forest Mall at such time to discuss the Offensive Relief with Forest Mall's counsel, including the fact that Forest Mall is violating the Automatic Stay by seeking the Offensive Relief. Indeed, on October 11, 2011, Debtors' counsel sent Forest Mall's counsel a letter reiterating that seeking the Offensive Relief violated the Automatic Stay. (*See* Compl. Exh. J.)

Nevertheless, Forest Mall's counsel presented the proposed Order to Show Cause to the State Court on October 12, 2011. On the same day, the State Court entered the Order to Show Cause and set a return date of November 4, 2011 for responses to the proposed order. A hearing on the proposed Order to Show Cause is currently set for November 7, 2011.

Following the entry of the Order to Show Cause on October 12, 2011, the Debtors' counsel again contacted Forest Mall's counsel regarding the fact that Forest Mall is

violating the Automatic Stay by seeking the Offensive Relief. Nonetheless, Forest Mall's counsel has indicated that it will persist in prosecuting the Offensive Relief. In continuing to seek the Offensive Relief, Forest Mall is knowingly and willfully violating the Automatic Stay. Prior to the filing of the Motion and the Complaint, the Debtors' counsel informed Forest Mall's counsel that the Debtors would seek relief from this Court to enjoin Forest Mall from prosecuting the Offensive Relief.

## ARGUMENT

The Court should enter a temporary restraining order and immediately prohibit Forest Mall from prosecuting the Offensive Relief because: (a) there is a reasonable likelihood that the Debtors' reorganization will be successful and that the Debtors will succeed on their claims that Forest Mall has violated the Automatic Stay; (b) the Debtors will be irreparably harmed if the Offensive Relief is granted and Forest Mall is able to preclude Shapiro from supporting a plan of reorganization for the Debtors, thereby frustrating the Debtors' reorganization efforts; (c) such harm to the Debtors overwhelmingly outweighs the alleged harm to Forest Mall of *potentially* impeding its ability to *improperly* enforce a charging order on a *valueless* membership interest; and (d) granting an injunction is in the public interest because it reinforces the fundamental protections of the Automatic Stay and allows the Debtors to successfully conclude these cases through a plan of reorganization that provides optimal recoveries to the Debtors' creditors. For these same reasons, the Court should issue a preliminary injunction prohibiting Forest Mall from seeking the Offensive Relief.

I.    **THIS COURT SHOULD ENJOIN FOREST MALL FROM CONTINUING TO PROSECUTE THE OFFENSIVE RELIEF BY ISSUING A TEMPORARY RESTRAINING ORDER IN THE FIRST INSTANCE AND THEN A PRELIMINARY INJUNCTION**

To prevent the harmful effects of the Offensive Relief on the Debtors' chapter 11 cases, the Debtors request that the Court issue a temporary restraining order prohibiting and enjoining Forest Mall from continuing to prosecute the Offensive Relief until this Court has issued a ruling on the Debtors' request for preliminary injunctive relief. This Court should immediately and without notice enter a temporary restraining order under section 105(a) of the Bankruptcy Code and Federal Rule of Civil Procedure 65(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7065.

Congress enacted section 105 of the Bankruptcy Code to enable a bankruptcy court to do whatever is necessary and appropriate to carry out the provisions of the Bankruptcy Code. *See In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007). Section 105(a) enables bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See id.* (noting that a court may issue a "preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process"). In addition, rule 7065 of the Federal Rules of Bankruptcy Procedure, which incorporates rule 65 of the Federal Rule of Civil Procedure, provides the mechanism for bankruptcy courts to issue temporary restraining orders and preliminary injunctions. *See* Fed. R. Bankr. P. 7065.

A temporary restraining order is properly granted where, as here, it is necessary to prevent immediate and irreparable injury pending a hearing on the request for a preliminary injunction. 7 *Moore's Federal Practice* ¶ 65.05, at 65-100 (2d ed. 1990). The standards for

obtaining a temporary restraining order are the same as those for obtaining a preliminary injunction. *See Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg. Servs., Inc.),* 360 B.R. 421, 426 (Bankr. D. Del. 2007) ("'Generally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order.'") (*quoting Tootsie Roll Indus., Inc., v. Sathers, Inc*., 666 F. Supp. 655, 658 (D. Del. 1987)).

Typically, a party seeking injunctive relief must show: (1) a reasonable likelihood of success on the merits; (2) that it will be irreparably harmed by denial of relief; (3) that such harm outweighs the potential harm to the nonmoving party; and (4) that granting the relief is in the public interest. *See U.S. v. Bell*, 414 F.3d 474, 478 n.2 (3d Cir. 2005) (discussing the traditional requirements for preliminary injunctions); *Kos Pharms., Inc. v. Andrx Corp*., 369 F.3d 700, 708 (3d Cir. 2004) (same); *In re Advanced Mktg. Servs., Inc*., 360 B.R. at 426 (same).

In the context of a pending bankruptcy proceeding and when a debtor seeks injunctive relief under section 105, the court applies the "usual preliminary injunction standard," but modifies it by focusing on "whether the debtor has a reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns, if relevant." *In re W.R. Grace & Co*., 386 B.R. 17, 33 (Bankr. D. Del. 2008). In addition, when an injunction is sought to protect a debtor from violations of the Automatic Stay, some courts dispense with the irreparable harm requirement. *In re Prudential Lines, Inc*., 107 B.R. 832, 835 n.4 (Bankr. S.D.N.Y. 1989) (When an act would violate the automatic stay, irreparable harm is established by the violation since Congress, by legislatively staying such acts, has determined that they cause irreparable injury to the estate.").

As set forth below, the Debtors have met the applicable standards and the Court should issue a temporary restraining order and an injunction prohibiting Forest Mall from prosecuting the Offensive Relief.

### A. There is a Reasonable Likelihood That the Debtors Will Successfully Reorganize and That the Debtors Will Succeed on the Merits of Their Claims that Forest Mall Has Violated the Automatic Stay

The first factor courts use to analyze the propriety of injunctive relief is a reasonably likelihood of success on the merits. *In re Advanced Mktg. Servs., Inc*., 360 B.R. at 426. Courts have viewed this factor in the bankruptcy context as a probability of a successful plan of reorganization. *In re W.R. Grace & Co*., 386 B.R. at 33; *see also In re Monroe Well Service,* 67 B.R. 746, 752 (Bankr. E.D. Pa. 1986) (success on the merits means "reasonable likelihood of successful reorganization"); *In re Otero Mills, Inc.,* 21 B.R. 777, 779 (Bankr. D.N.M. 1982) ("[s]uccess on the merits has been defined as the probability of a successful plan of reorganization in cases such as the one under consideration."). Here, not only is there a reasonable likelihood that the Debtors will succeed on the merits of their claims that Forest Mall violated the Automatic Stay, but importantly, there is a high likelihood that the Debtors will be able to successfully reorganize.

### 1. There is a Reasonable Likelihood That the Debtors Will Succeed on the Merits of Their Claims that Forest Mall Has Violated the Automatic Stay

By seeking the Offensive Relief, Forest Mall attempts to prevent Shapiro, under threat of contempt, from carrying out his fiduciary duties by supporting a plan of reorganization for the Debtors and to compel a turnover of the Debtors' property. By seeking the Offensive Relief, Forest Mall is continuing to prosecute prepetition claims against the Debtors outside of

the bankruptcy process and interfering with the Debtors' property and ability to reorganize. Such actions are textbook violations of not less than three provisions of the Automatic Stay which prohibit:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [and]

> any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(1)-(3).

First, the Offensive Relief seeks to enforce the Forest Mall Judgment, through the provisions of the Charging Order and Restraining Notice, against the Debtors and property of their estates in violation of Bankruptcy Code section 362(a)(2). Similarly, the Offensive Relief is an attempt to recover a claim against the Debtors that arose prepetition in violation of Bankruptcy Code section 362(a)(1). Finally, the Offensive Relief further seeks to exercise control over property of the Debtors' estates by requiring the production of the Debtors' business records and effectively disabling the Debtors from supporting a plan due to a threat of contempt directed at Shapiro. Although the Offensive Relief is facially leveled at Shapiro, it is actually a thinly veiled attempt to circumvent the Automatic Stay and obtain relief against the Debtors. As a result, the Debtors will be able to show that by seeking the Offensive Relief, Forest Mall has violated the Automatic Stay.

In addition, even if the Automatic Stay did not plainly apply, which it does, bankruptcy courts, both in this jurisdiction and in others, consistently extend the reach of the

Automatic Stay to enjoin prosecution of litigation against non-debtors in circumstances similar to those presented here. *See Gillman v. Continental Airlines, Inc. (In re Continental Airlines)*, 177 B.R. 475 (D. Del. 1993); *Loewen Group Int'l, Inc. v. Gilligan (In re Loewen Group Int'l, Inc.)*, 2001 WL 1819995 (Bankr. D. Del. 2001); *In re Am. Film Techs., Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994); *see also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir.), cert. denied, 479 U.S. 876 (1986); *Sudbury, Inc. v. Escott (In re Sudbury, Inc.)*, 140 B.R. 461, 467 (Bankr. N.D. Ohio 1992); *In re Ionosphere Clubs, Inc.,* 111 B.R. 423, 434 35 (Bankr. S.D.N.Y. 1990), *aff'd in part*, 124 B.R. 35 (S.D.N.Y. 1991); *Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990).

It is well established that the Automatic Stay applies to proceedings against a debtor's decision makers where, as here, those parties share an identity of interest with the debtor with respect to the litigation and the litigation will directly affect the debtor and its assets. As the United States District Court for the District of Delaware held in *In re Continental Airlines*:

> courts in this circuit and others have held that while the automatic stay ordinarily applies only to actions against the debtor itself, it is properly extended to actions against non-debtors where an identity of interest exists between the debtor and non-debtor defendant such that the debtor is the real defendant and the litigation will directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization.

*Id.* at 479 (citations omitted). Similarly in *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), the court affirmed injunctive relief because there was "such identity between the debtor and the third-party defendant that the debtor [could] be said to be the real party defendant and that a judgment against the third-party defendant [would] in effect be a judgment against the debtor." The equities that supported the grant of injunctive relief in *In re Continental Airlines* and *A.H. Robins* are no less compelling here.

A judgment against Shapiro granting the Offensive Relief will effectively operate as a judgment against the Debtors. Forest Mall seeks to hold Shapiro in contempt for carrying out his fiduciary duties to the Debtors, their estates and creditors by supporting a plan of reorganization in accordance with the Control Order. Forest Mall also seeks to compel Shapiro to provide the Debtors' business records. If Forest Mall is able to prevent Shapiro from supporting a plan of reorganization for the Debtors, the Debtors' ability to reorganize will be directly and deleteriously affected. The ramifications of such relief on the Debtors' cases cannot be overstated at this time when the Debtors are in the process of finalizing a plan and soliciting higher and better plan offers. This creates a clear identity of interest between Shapiro and the Debtors with respect to the Offensive Relief. In light of this risk and notwithstanding the fact that the State Court Action is stayed with respect to the Debtors, the Debtors will be required to participate in the hearing on the Order to Show Cause. Yet, the clear intent of the Automatic Stay is to relieve debtors of such burdens to allow them space to reorganize. Accordingly, a temporary restraining order and an injunction prohibiting Forest Mall from seeking the Offensive Relief is appropriate.

### 2. There is a Reasonable Likelihood that the Debtors Will Successfully Reorganize

In addition to success on their Automatic Stay violation claims against Forest Mall, a temporary restraining order and an injunction are proper because the Debtors have a reasonable likelihood of a successful reorganization. In the context of a debtor's request for an injunction, bankruptcy courts view the success on the merits factor as meaning a "reasonable likelihood of successful reorganization." *In re Monroe Well Service,* 67 B.R. at 746, 752 (Bankr. E.D. Pa. 1986); *In re W.R. Grace & Co.*, 386 B.R. at 33; *In re Otero Mills, Inc.,* 21 B.R. at 779

("[s]uccess on the merits has been defined as the probability of a successful plan of reorganization in cases such as the one under consideration.").

Pursuant to the provisions of the Commitment Letter, the Bid Procedures Order, the Broker Order and the Settlement Order, the Debtors, OMF, HFZ Capital Group LLC, and the Committee have settled substantial issues that have impeded the forward progress of these cases for months and have obtained Court approval of such settlement. The Debtors have filed a plan and related disclosure statement supported by their prepetition secured lender, their postpetition lenders and the Committee. Such plan was heavily negotiated and carefully considered by all parties. In addition, the Debtors have begun a marketing process to solicit competing plan offers. The Debtors expect the marketing process to conclude in December and to seek approval of a disclosure statement by the end of this year. After that point, the Debtors will solicit votes for their plan and seek confirmation of such plan. The likelihood that the Debtors will be able to reorganize, however, largely depends on whether the Debtors are able to prosecute their plan of reorganization over the next several months. The Offensive Relief sought by Forest Mall would potentially derail this reorganization process and thus must be stopped.

### B. The Debtors Will Suffer Immediate Irreparable Harm Without the Injunctive Relief

The second factor courts use to analyze the propriety of injunctive relief is whether irreparable harm will result absent injunctive relief. *In re Advanced Mktg. Servs., Inc.*, 360 B.R. at 426. Irreparable injury is harm that cannot be adequately compensated by money damages. *See Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987) (noting that irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it"). Moreover irreparable harm is *per se* established where an act violates the Automatic Stay because "Congress, by legislatively staying such acts, has determined that they cause irreparable

injury to the estate." *In re Prudential Lines, Inc.*, 107 B.R. 832, 835 n.4 (Bankr. S.D.N.Y. 1989); *In re Transcon Lines*, 147 B.R. 770, 775 (Bankr. C.D. Cal. 1992) ("The Trustee need not show 'irreparable harm.' The threatened violation of the automatic stay is sufficient grounds for issuance of this injunction."). As discussed above, Forest Mall's continued prosecution of the Offensive Relief is a violation of the Automatic Stay, which *per se* irreparably harms the Debtors.

Absent an order enjoining Forest Mall from seeking the Offensive Relief, the Debtors will be irreparably harmed by the impairment of their ability to support a successful plan of reorganization. Such a result would effectively derail the Debtors' efforts to confirm their plan and live up to their obligations under the Commitment Letter, which constitutes irreparable harm for which the Debtors have no adequate remedy at law. In short, without immediate entry of an injunction, there is a clear and present danger of immediate and irreparable interference with the Debtors' ability to maximize value through the chapter 11 process which is dependent on their ability to support a plan.

C. **The Balance of Equities Favors the Issuance of an Injunction and Temporary Restraining Order**

The third factor courts use to analyze the propriety of injunctive relief is whether the balance of equities favors the issuance of injunctive relief. *In re Advanced Mktg. Servs., Inc.*, 360 B.R. at 426. Here, the balance clearly favors the issuance of an injunction because Forest Mall will not suffer any harm if the Offensive Relief is enjoined. First, Forest Mall can seek discovery from the Debtors through proper procedures provided under the Bankruptcy Code, if appropriate. Second, by the Offensive Relief, Forest Mall seeks to protect its Charging Order against Shapiro's economic interest in Slazer - an entity whose sole asset consists of equity in a bankruptcy company and which has no independent stream of income. *Forest Mall cannot be*

*injured by Shapiro's support of a plan of reorganization because under no realistic circumstances – whether inside bankruptcy or outside bankruptcy in foreclosure – will value flow to the Debtors' equity holders.*   The Debtors' property is heavily encumbered by approximately $247 million in secured debt, not to mention the tens, if not hundreds, of millions of dollars in unsecured claims.  All of these claims must be paid prior to equity interests.  The Debtors submit that, based upon the events of the past year, it stretches the bounds of credible advocacy to suggest that Shapiro's economic membership interest in Slazer carries any monetary value, regardless of Shapiro's supporting a plan in accordance with his fiduciary duties and the Control Order.  Moreover, if Forest Mall believes that interest has value, it will have the right to object to the Debtors' plan.

Thus, Forest Mall's real purpose in seeking the Offensive Relief is clear.  Instead of protecting its recovery upon the Forest Mall Judgment, Forest Mall is seeking to control the Debtors' ability to reorganize by placing Shapiro in an impossible position where he cannot fulfill his fiduciary duties to the Debtors in accordance with the Control Order without facing contempt charges.  Enjoining Forest Mall from prosecuting such relief does not constitute harm to Forest Mall and a temporary restraining order and injunction are proper.

**D.      Injunctive Relief is in the Public Interest Because Injunctive Relief Promotes the Debtors' Effective Reorganization and Promotes the Purpose of the Automatic Stay**

The final factor courts use to analyze the propriety of injunctive relief is whether injunctive relief is in the public interest.  *In re Advanced Mktg. Servs., Inc.*, 360 B.R. at 426.  Here, the issuance of a temporary restraining order and an injunction is in the public interest because it will promote the successful reorganization of the Debtors and uphold the purpose of the Automatic Stay.

First, bankruptcy courts in this district have repeatedly recognized the strong public interest in promoting a successful chapter 11 reorganization which may be protected by the issuance of an injunction. *See In re Broadstripe, LLC*, 402 B.R. 646, 659 (Bankr. D. Del. 2009) ("In the face of the potential for significant injury to the Debtors' business value and reorganization efforts and the potential loss of service to its customers, the public interest favors granting the requested injunctive relief to enable the Debtors to attempt to reorganize in chapter 11."). The Offensive Relief goes directly to the heart of the Debtors' reorganization efforts by attempting to inhibit Shapiro from supporting a plan and thereby crippling the Debtors' reorganization prospects. Granting a temporary restraining order and an injunction promotes the public interest in promoting the Debtors' successful reorganization.

Second, permitting Forest Mall to seek or obtain the Offensive Relief would seriously contravene the policies underlying the Automatic Stay; whereas, granting a temporary restraining order or an injunction would further the purposes of the Automatic Stay. As courts widely recognize, the purpose of the automatic stay is to provide a debtor with a "breathing spell" from litigation and creditor collection efforts while the debtor attempts to reorganize. *See, e.g., Lomas,* 117 B.R. at 67 ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy") (*citing* legislative history regarding section 362 of the Bankruptcy Code).

If Forest Mall is allowed to seek the Offensive Relief, the protections of the Automatic Stay will be eviscerated because the Debtors will forced to participate in the State Court Action as a real party in interest. *See Lomas*, 117 B.R. at 66 (the continued pursuit of an

action against a non-debtor was nothing more than "a poorly disguised effort . . . to circumvent § 362 of the Code"). If Forest Mall is successful in obtaining the Offensive Relief, the protections of the Automatic Stay would be circumvented because Forest Mall would be exercising control over the Debtors' estates while precluding the Debtors' ability to effectively reorganize. Accordingly, the public interest here weighs strongly in favor of granting a temporary restraining order and an injunction.

A temporary restraining order and injunction prohibiting Forest Mall from seeking the Offensive Relief will serve the public interest by promoting compliance with the Congressional intent of the Automatic Stay, furthering the Debtors' successful prosecution of a plan of reorganization, preserving the assets of the Debtors' estates and minimizing interruptions and distractions to the Debtors' management. Such an order is necessary and appropriate to carry out the provisions of the Bankruptcy Code.

### E. Fed. R. Bankr. P. 7065 Expressly Exempts the Debtors from the Security Requirement of Fed. R. Civ. P. 65

Bankruptcy Rule 7065 provides that the Court may issue a temporary restraining order and preliminary injunction on application of a debtor in possession, without compliance with the security provision of Rule 65(c) of the Federal Rules of Civil Procedure. The Debtors submit that the security requirements of Rule 65(c) of the Federal Rules of Civil Procedure would impose an undue burden on their estates. Moreover, Forest Mall will not be prejudiced by the injunction. Accordingly, the Debtors request that, pursuant to Bankruptcy Rule 7065, the Court waive any requirement for security.

### CONCLUSION

For all of the reasons set forth above, the Debtors respectfully request that this Court enter an order pursuant to sections 362 and 105 of the Bankruptcy Code (i) granting a

temporary restraining order to prohibit Forest Mall seeking the Offensive Relief in State Court;

(ii) preliminarily enjoining Forest Mall from prosecuting the Offensive Relief in the State Court;

and (iii) granting such other and further relief as is necessary and proper.

Dated: October 31, 2011          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
       Wilmington, Delaware

*/s/ Erin R. Fay*
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
Erin R. Fay (No. 5268)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

*Counsel for Debtors and Debtors-in-Possession*

4560113.4